**UNITED STATES, Appellee,**

v.

**Private (E–1) Walter N. MOODY, SSN 413–88–6857, United States Army, Appellant.**

**SPCM 12373.**

U. S. Army Court of Military Review.

24 May 1977.

---

* *United States v. Hawes*, 19 U.S.C.M.A. 173, 41 C.M.R. 173 (1969); *United States v. Lovett*, 7 U.S.C.M.A. 704, 23 C.M.R. 168 (1957).

Captain John E. Caulking, JAGC, argued the cause for the appellant. With him on the brief were Lieutenant Colonel John R. Thornock, JAGC, and Major Benjamin A. Sims, JAGC.

Captain Ronald A. Warner, JAGC, argued the cause for the appellee. With him on the brief was Major Michael B. Kennett, JAGC.

Before JONES, Senior Judge, and FULTON and FELDER, JJ.

## OPINION OF THE COURT

FULTON, Judge:

The appellant was convicted by a military judge, sitting as a special court-martial, of disobeying his company commander's order to get out of bed and threatening to stab a barracks roommate. He was sentenced to a bad-conduct discharge, confinement for 100 days, and reduction to Private E1. The sole issue on appeal is whether the evidence sustains the conviction of communicating a threat. It is asserted that the statements and acts of the appellant displayed a deter-mination to avoid, rather than inflict, injury. We affirm the conviction.

The events in question began at or before 0500 hours on a duty day when the company commander entered their barracks room to arouse the appellant and his fellow occupants, Privates First Class Kirby Krum and David Morris. (The appellant did not arise on the initial visit and subsequently pleaded guilty to disobeying the order.) An argument between the appellant and Krum ensued. Apparently Krum contended that it was because of the appellant's behavior that they had to be aroused at such an early hour. The appellant, on the other hand, contended that Krum did not do his share in cleaning the room, often remaining away overnight and returning only in time for formation. Later, at about 0615, the appellant approached his platoon leader and platoon sergeant and asked them to step inside the room. They did so, and that is when the threats to Krum were made. The specification alleges that the appellant said to Krum, "I'm going to cut you," and "I'm going to hurt or stab you in your sleep," or other words of the same import.

According to the platoon leader, the appellant initially stated that he wanted to be moved out of the room because, if he wasn't he would have trouble with Krum, and that he would hurt Krum. At that point, Krum, who had not been in the room, entered and stood by the door. The platoon leader testified that "Moody got a little more agitated and started pointing at Krum saying that he didn't want to be in the same room with him . . . and . . . that if he wasn't moved out he was going to hurt Krum . . . . He said that he . . . would among other things, cut him or stab him—, he said that he'd stab him in his sleep if necessary, said he swore on his mother's grave and now he swore on his little brother's grave."

The platoon sergeant gave a similar account, as follows:

We entered the room and we were standing in the middle of it, Private Moody was standing beside of his bed, and he

told us that we were gonna have to move Krum out of his room, that there was gonna be serious trouble . . .. At about that time . . . Krum entered the room. And Krum remained standing by the door and Moody raised his hand and pointed to him and said, "I'm gonna cut him, I will stab him in his sleep." At this time Lieutenant Wallace told him not to point, he dropped his hand, and he says, "I swear on my brother's grave I will cut him in his sleep," and he pointed two or three times, he made this same threat a few times, words to the same effect.

The appellant testified that he did speak the words attributed to him, but not to Krum, who he denied was in the room, and only for the purpose of being moved from the same room.

The platoon sergeant and platoon leader each testified that they believed the appellant capable of carrying out his threats. They did not, however, immediately separate the two roommates, for it was believed that they would be under supervision and not alone during the duty day. Before going home for the evening, the platoon sergeant looked for Krum, but could not find him, and so did not move Krum until the next day.

■ The offense of communicating a threat is complete when one wrongfully communicates to another an avowed present determination or intent to injure presently or in the future. *United States v. Gilluly,* 13 U.S.C.M.A. 458, 461, 32 C.M.R. 458, 461 (1963).

The intent which establishes the offense is that expressed in the language of the declaration, not the intent locked in the mind of the declarant. . . . Thus, the presence or absence of an actual intention . . . to effectuate the injury set out in the declaration does not change the elements of the offense. This is not to say the declarant's actual intention has no significance as to his guilt or innocence. A statement may declare an intention to injure and thereby ostensibly establish this element of the offense, but the declarant's true intention, the understanding of the persons to whom the statement is communicated, and the surrounding circumstances so belie or contradict the language of the declaration as to reveal it to be a mere jest or idle banter.

*Id.; accord, United States v. Shropshire,* 20 U.S.C.M.A. 374, 43 C.M.R. 214 (1971).

In *United States v. Rutherford,* 4 U.S.C.M.A. 461, 16 C.M.R. 35 (1954), an accused had asked a confinement officer to let him remain in confinement, saying that, if he went back to his unit, he would kill his company commander. A majority of the court viewed this as no threat at all, and regarded both the words and the actions as revealing a purpose to avert injury to the company commander. In *United States v. Wartsbaugh,* 21 U.S.C.M.A. 535, 45 C.M.R. 309 (1972), an accused said to his lieutenant, "Sir, you had better take this [his rifle] from me too or you may not make it back [to the firebase in Vietnam, to which they were returning]." Similarly, the court did not regard this as a threat. If the statement was made before the weapon was taken away, the words revealed a purpose to avert injury; if after, they revealed relief.

■ The appellant contends that his case is similar to those of *Rutherford* and *Wartsbaugh.* There is, however, a significant difference. Admittedly the appellant was attempting to secure a change in room assignments, either for himself or Krum, but that was not a contingency which neutralized the threats communicated directly to Krum. The language of the declarations was that the appellant was going to cut or stab Krum, and would do so while Krum was asleep *if necessary.* The witnesses regarded such statements as threats which the appellant was then capable of carrying out. Also, they moved Krum to another room, and the reasons for delay in doing so were not inconsistent with a belief in the genuineness of the threats.

The findings of guilty and sentence are affirmed.

Senior Judge JONES and Judge FELDER concur.